**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JANE BENNETT, ) | |
| ) | CASE NO. 3:15-cv-00302 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | **MEMORANDUM OPINION & ORDER** |
| Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Jane Bennett ("Bennett") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Bennett's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

## I. Procedural History

On October 21, 2011, Bennett filed applications for POD, DIB, and SSI alleging a disability onset date of February 7, 2011. (Tr. 229-243.) Her applications were denied both initially and upon reconsideration. (Tr. 85, 111.)

On July 26, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Bennett, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 11.) On August 28, 2013, the ALJ found Bennett was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 28-30.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-3.)

## II. Evidence

*Personal and Vocational Evidence*

Age thirty-eight at the time of her administrative hearing, Bennett is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 44.) Bennett has obtained a GED. (Tr. 46.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental

2

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Bennett was insured on her alleged disability onset date, February 7, 2011, and remained insured through the date of the ALJ's decision, August 28, 2013. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Bennett must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Bennett established medically determinable, severe impairments, due to degenerative disc disease with scoliosis, status post two lumbar fusion surgeries; asthma/chronic obstructive pulmonary disease; substance abuse (alcohol) in remission; and, migraine headaches.

---

ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

(Tr. 14.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16.) Bennett was found capable of performing her past relevant work as a cashier II, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 18, 28.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Bennett was not disabled. (Tr. 28-29.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

Bennett asserts that the ALJ erred in her duty to develop the record as it related to mental impairments when she failed to enforce a subpoena previously issued to Gary Incorvaia, LISW, MS, whom Bennett refers to as her treating psychologist.[2]  (ECF No. 13 at 10-15.)  Bennett further asserts that the ALJ failed to comply with HALLEX § I-2-5-82[3] when she failed to enforce the subpoena and failed to state her reasons for doing so.  (ECF No. 13 at 14.)

Three days prior to the hearing, on July 23, 2013, Bennett's counsel wrote a letter to the ALJ requesting a subpoena for Mr. Incorvaia's mental health treatment records.  (Tr. 376.)  It is undisputed that the ALJ issued a subpoena to Mr. Incorvaia.  (Tr. 11, 226.)  At the hearing, the ALJ indicated she would leave the record open to receive additional evidence of Bennett's mental health treatment, singling out Mr. Incorvaia and Dr. Eble by name.[4]  (Tr. 74.)  The same day the hearing occurred, Mr. Incorvaia left a voicemail with the Hearing Office indicating that he had received the subpoena for Bennett's treatment records, but was unwilling to release them due to an overdue bill.  (Tr. 377.)  The ALJ's decision makes two references to Mr. Incorvaia's

---

[2]  The Court has some reservations about whether Gary Incorvaia, LISW, MS, qualifies as an "acceptable medical source," as only *licensed* or *certified* psychologists are designated as such in the regulations.  20 C.F.R. § 404.1513(a)(2).  Pursuant to a query performed at the website address https://license.ohio.gov/lookup/default.asp, there are no licensed psychologists named Gary Incorvaia, and the license of an individual named James A. Incorvaia, Ph. D., expired in 1976.  There are also no hits for anyone with the last name "Incorbaia" as stated at the hearing.  (Tr. 74.)

[3]  HALLEX is the acronym for "Hearings, Appeals, Litigation and Law (LEX)" manual containing both procedural instructions and substantive material for all cases under the jurisdiction of the Office of Hearings and Appeals (OHA).

[4]  The ALJ's reference to the missing records of "Dr." Eble at the hearing appears to be a misnomer, as Daniel J. Eble lists his credentials as M.Ed. (Master's degree in education) and PCC-S (Supervising Licensed Professional Clinical Counselor).  (Tr. 226, 376.)

refusal to respond to the subpoena. (Tr. 11, 14, 377.)

Absent special circumstances, the Sixth Circuit has repeatedly held that "the claimant bears the ultimate burden of proving disability." *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant."); *see also* 20 C.F.R. § 404.1512(a). Only under limited circumstances – "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures--an ALJ has a *special, heightened* duty to develop the record." *Wilson*, 280 Fed. App'x at 459 (emphasis added). Here, there was no heightened duty as Bennett was represented by counsel.

Nonetheless, it appears Bennett's counsel took all reasonable steps necessary to procure the treatment records from Mr. Incorvaia, including requesting and receiving a subpoena for the records from the ALJ. The regulations governing social security disability benefits state as follows:

> When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

20 C.F.R. § 416.1450(d)(1).

Here, by issuing a subpoena, the ALJ implicitly determined that the records kept by Mr. Incorvaia were reasonably necessary for a full presentation of Bennett's case. The Agency's HALLEX manual addresses what should occur if an individual refuses to comply with a

subpoena:

> If an individual refuses or fails to comply with a subpoena, ***the ALJ must consider any changes in the situation since the subpoena was first issued and again determine whether the evidence or facts requested are reasonably necessary for the full presentation of the case***. If so, the ALJ will prepare a memorandum to the OGC Regional Chief Counsel requesting enforcement of the subpoena (see A. below), and transmit the memorandum to the OGC Regional Chief Counsel through the HOCALJ who shall forward it to the RCALJ.

HALLEX § I-2-5-82. Noncompliance With a Subpoena (last Updates 8/28/2005) (emphasis added)

It is not entirely clear whether the ALJ complied with the above provision, as the decision makes no mention whether there were any changes since the subpoena issued and contains no explanation as to whether the subpoenaed records remained necessary. (Tr. 11-30.) The Commissioner argues that the above provision, while requiring an ALJ to *consider* any change in circumstances, does *not* require the ALJ to *articulate or explain* her thought process.[5] (ECF No. 15.) The parties cite no authority on this point. In *Treadwell v. Schweiker*, 698 F.2d 137, 141 (2d Cir. 1983), the Second Circuit Court of Appeals remanded due to an ALJ's failure to state reasons for not enforcing a subpoena for medical records before making an adverse determination. *Accord Valcourt v. Astrue*, 2011 U.S. Dist. LEXIS 34990 at *24 (E.D.N.Y. Mar. 31, 2011) ("Although the ALJ subpoenaed additional medical records from Dr. Lambrakis, she

---

[5] The Commissioner also argues that if the ALJ failed to follow its own procedure in HALLEX-I-2-5-82, any error was harmless because Bennett has failed to demonstrate that Mr. Incorvaia's records would have resulted in greater mental work-related limitations. (ECF No. 15 at 5.) The Court need not address this argument as this Court's remand is grounded in the ALJ's failure to hold a full and fair hearing and to develop the facts – not because HALLEX-I--5-82 was violated. Nonetheless, the Court notes that it would be exceedingly difficult if not impossible for a claimant to show that subpoenaed records would have made a material difference if access to those records was denied.

8

did not discuss why she failed to enforce the subpoena or attempt to fill 'gaps in the treatment record' by re-contacting him.") However, as explained by a later decision, the *Treadwell* holding was based on an older version of HALLEX § I-2-5-82 no longer in force:

> [T]here is a more immediate problem with the *Treadwell* case and the Social Security Administration Handbook ... provision that it, and the Report [and Recommendation], directly quote. (Rep. at 32.) According to *Treadwell* and the Report, Section I-2-5-82 of the Handbook, Noncompliance with a Subpoena, requires that an ALJ prepare a memorandum explaining any choice not to enforce a subpoena. While on January 11, 1983, when *Treadwell* was decided, Section I-2-5-82 may have so instructed, it certainly does not today and apparently did not at the time this matter was before the ALJ.

*Serrano v. Barnhart*, 2005 U.S. Dist. LEXIS 31019 (S.D.N.Y. Nov. 10, 2005) (finding the Court of Appeals' current view was that issuance and enforcement of a subpoena by an ALJ is discretionary).

The Court agrees with *Serrano* that the ALJ's failure to articulate the reasons for not enforcing the subpoena does not automatically require a remand. However, this finding does not end the inquiry of whether the ALJ complied with her duty to fully and fairly develop the record. The *Serrano* court did not end its analysis after finding that the enforcement of a subpoena is discretionary and went on to explain that the medical record, in its view, was not incomplete and that "the ALJ's decision not to enforce the subpoena was well within her discretion on the facts presented." *Id*. at \*4. The *Serrano* court expressly noted that the ALJ had the claimant's medical history from 1998 to 2001, as well as complete medical opinions from four different examining doctors. *Id*. It found that enforcement of a subpoena to a fifth *examining* source would be a "tremendous and undue burden." *Id*.

Even though the ALJ did not have a *heightened* duty to develop the record and was not required to articulate her reasons for failing to enforce the subpoena, she still had a duty to

9

ensure that a reasonable record was developed. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). "In *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971), the Supreme Court explained that the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983); *Gibson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 20918 (S.D. Ohio Feb. 18, 2014) ("the ALJ has an affirmative duty to ensure that every claimant receives a 'full and fair hearing' and to develop the facts upon which her decision rests"). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 110-111 (2000).

    Here, the Court finds that the ALJ failed in her duty to fully and fairly develop the record. As stated above, the ALJ's initial decision to issue the subpoena requires the conclusion that she believed Mr. Incorvaia's records were "reasonably necessary for the full presentation" of Bennett's case. The Commissioner asserts that there were changed circumstances and points to the treatment notes of Patricia Vega, M.D., and Mr. Eble, as well as the opinions from State Agency psychologists from 2011 and 2012. However, the State Agency opinions were rendered without the benefit of Mr. Incorvaia's treatment notes and, moreover, those opinions were already part of the record when the ALJ determined that a subpoena was necessary. Bennett also avers that Dr. Vega's treatment notes were already part of the record when the ALJ decided a subpoena was required.[6] (ECF No. 16 at 2-3.) The Court agrees and finds it reasonable to infer

---

[6] The Commissioner does not contradict this assertion, though she would have had to file a surreply to do so, as Bennett's assertion occurs in her reply brief. It is clear, however, that Exhibits 1F, 4F, 7F, and 15F, which contain treatment records from Dr. Vega, were all

that all of Dr. Vega's treatment notes were part of the record at the time the ALJ determined a subpoena was necessary for full presentation of Bennett's case. It also bears noting that Dr. Vega appears to have treated Bennett primarily for her physical impairments, though there is evidence that she prescribed Bennett psychotropic medications. (Tr. 500-501.)

With respect to the records of Mr. Eble, submitted after the hearing, the decision fails to mention them at all. There are, however, two citations to Exhibit 39F, which contain his notes. (Tr. 14.) One citation appears in a string citation and is unexplained. *Id*. The ALJ's other citation comes after an observation that Bennett's psychiatric symptoms increased, resulting in an adjustment of her psychiatric medications. *Id*. As pointed out in Bennett's reply brief, the primary purpose of her March 13, 2013 initial visit with Mr. Eble was a referral by James Otting, M.D., from a pain management center, in order to evaluate Bennett's risk for misuse of opioid pain medication. (ECF No. 16 at 2, *citing* Tr. 892-893.) Bennett also notes that she was only seen by Mr. Eble for a very short span of time between March of 2013 and June of 2013, while her claimed onset date is February 7, 2011. *Id*. The Court agrees with Bennett that Mr. Eble's notes offer, at most, a relatively brief snapshot of her mental impairments. It is unreasonable to find that Mr. Eble's treatment for three months obviated the ALJ's determination that Mr. Incorvaia's records were needed for a full and fair hearing.

Unlike the subpoena at issue in *Serrano,* which involved a redundant subpoena to a fifth

---

submitted to the State Agency well before the ALJ issued the subpoena on July 23, 2013. (Tr. 384, 407, 491, 598.) The only notes of Dr. Vega's that are not clearly denoted as having been submitted before the issuance of the subpoena are contained in Exhibit 35F. (Tr. 834-843.) Nevertheless, despite containing treatment notes from both April 18, 2013 and May 17, 2013 – each page of Exhibit 35F bears a printed mark of May 20, 2013 at the very top along with times stamps spanning from 4:36 p.m. to 4:38 p.m., all which are highly consistent with marks made by fax machines during transmission.

*examining* source, the one herein sought mental health treatment records from a *treating* source to supplement what appears to be a paucity of evidence concerning Bennett's mental health issues.[7]  While the ALJ may not have been required to state her reasons on the record for not enforcing the subpoena, the Court finds that under the facts of this case, the lack of any materially new developments in the mental health records available to the ALJ undermined Bennett's right to have the record fully and fairly developed.  *See, e.g., Philpot v. Astrue*, 2010 U.S. Dist. LEXIS 28402 at *30 (S.D. Ohio Feb. 18, 2010) ("when the ALJ obtains knowledge that meaningful records are not contained in the medical record before the Court, it is the ALJ's duty to see that the record is fully and fairly developed."), *report and recommendation rejected on other grounds by* 2010 U.S. Dist. LEXIS 28385 (S.D. Ohio Mar. 24, 2010); *cf. Spurlock v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 135725 at *20 (N.D. Ohio July 3, 2013) (because the ALJ recognized that the missing records were relevant to the disability determination, his failure to obtain them resulted in a violation of the duty to fully and fairly develop the record), *adopted and remanded by*, 2013 U.S. Dist. LEXIS 135716 (N.D. Ohio Sept. 23, 2013).

As such, the Court finds a remand is necessary to fully and fairly develop the record.

***Other Assignments of Error***

Bennett has also argued that the ALJ's credibility finding is not supported by substantial evidence (ECF No. 13 at 15-18); and, that the ALJ improperly discredited the opinions of two of her treating physicians – Drs. Vega and McCormick.  (ECF No. 13 at 18-20.)

As the Court has determined a remand is necessary, these arguments will not be addressed in the interests of judicial economy.  Nonetheless, the Court notes that the ALJ rejected the

---

[7] It bears noting the ALJ found Bennett's depression and anxiety were non-severe.

opinions of the treating physicians as to Bennett's functional limitations because they were "inconsistent with the weight of the medical evidence as a whole" and because "significant improvement" was noted after Bennett's surgeries. (Tr. 25-26.) Without deciding the matter, the Court notes that it routinely finds the treating physician rule has been violated where the decision contains only conclusory language that a treating source's opinion was not supported by the objective evidence or the medical record as a whole and where those conclusions are not actually explained in any meaningful detail.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White  
U.S. Magistrate Judge

Date: January 26, 2016